IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  08-cv-00464-LTB-MJW

DIANA JOHNSON,

        Plaintiff,

v.

TOWN OF VAIL, COLORADO,
JAMES APPLEGATE,
JESSICA DEERY, and
CRAIG BETTIS,

        Defendants.

_____

## ORDER
_____

This matter is before me on a Motion for Summary Judgment [**Doc #45**] filed by

Defendants, Town of Vail, Colorado, James Applegate, Jessica Deery (also known as Jessica

Mayes), and Craig Bettis, seeking judgment against Plaintiff, Diana Johnson.  Oral arguments

would not materially assist me in the determination of this motion.  After consideration of the

parties' briefs and arguments, I GRANT IN PART and DENY IN PART the motion for the

following reasons.

## I.  BACKGROUND

In this lawsuit Plaintiff asserts that Defendants violated her civil rights in violation of the

Fourth Amendment, under 42 U.S.C. § 1983, for unreasonable search and seizure and the use of

excessive force.  Specifically, she asserts claims against Vail Police Officers James Applegate

and Jessica Deery for unlawful entry, false arrest and use of excessive force.   Plaintiff asserts

that Vail Officer Bettis ratified this illegal conduct via his failure to supervise Officers Applegate

and Deery.   Finally, Plaintiff asserts that the Town of Vail failed to train, supervise and

discipline Officers Applegate, Deery and Bettis, thus ratifying their illegal conduct.

## II.  FACTS

Although the underlying facts are hotly contested, it is undisputed that on the evening of

March 10, 2006, Officers Applegate and Deery were dispatched to Plaintiff's residence.   After

Plaintiff answered the door, the Officers entered the residence.   The Officers seized a

screwdriver from Plaintiff's hand by force and, ultimately, Plaintiff was taken down, handcuffed

and arrested.   In connection with the incident, Plaintiff was charged with assault on a peace

officer, obstruction of a peace officer, and resisting arrest.   She ultimately plead no contest to a

charge of disorderly conduct.

## III.  SUMMARY JUDGMENT

Summary judgment is appropriate if the record reveals that "there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."

Fed.R.Civ.P. 56(c). When applying this standard, I examine the factual record in the light most

favorable to the party opposing summary judgment, extending to that party all reasonable factual

inferences.  *Id.*   If the movant carries its burden of showing the absence of a genuine issue of

material fact, the non-movant must bring forward specific facts showing a genuine issue for trial

as to those dispositive matters for which it carries the burden of proof.   An issue of material fact

is genuine if a reasonable jury could return a verdict for the non-movant.  *Jenkins v. Wood*, 81

F.3d 988, 990 (10th Cir. 1996).

## IV. OFFICIAL CAPACITY CLAIMS

As an initial matter, I first address Defendants' assertion that the claims raised by Plaintiff against Officer Applegate and Sergeant Bettis in their official capacity should be dismissed.   In her amended complaint, Plaintiff alleges that Defendant James Applegate is a police officer employed by the Town of Vail.  Plaintiff is suing Officer Applegate both individually and "in his official capacity as a Field Training Officer."  She also alleges that Defendant Craig Bettis is a sergeant of the police department and is employed by the Town of Vail.  She is suing him in his official capacity only.

Defendants assert that claims brought against individuals acting in their official capacity are "only another way of pleading an action against an entity of which an officer is an agent." *Johnson v. Board of County Comm'rs for County of Fremont*, 85 F.3d 489, 493 (10th Cir. 1996) (*quoting Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). Thus, because the "real party in interest is the entity," *id*. at 489, and because Plaintiff has named the Town of Vail as a defendant in this lawsuit, Plaintiff's "official capacity" claims against Officer Applegate and Sergeant Bettis are duplicative and must be dismissed as a matter of law.

 I agree.  Because an official capacity suit serves to plead a claim against an entity for which the officer is an agent, municipalities should be named directly, rather than naming municipal officials in their official capacity.  *Kentucky v. Graham*, *supra,* 473 U.S. at 167 FN14. As such, to the extent Plaintiff asserts claims against Officer Applegate in his official capacity, they are dismissed.  Likewise, because Plaintiff's claims against Sergeant Bettis are solely asserted in his official capacity, they are dismissed and Sergeant Bettis is dismissed as a defendant in this case.

## V.  HECK DOCTRINE

I next address and reject Defendants' argument that some of Plaintiff's § 1983 claims are barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994).  Specifically, Defendants assert that Plaintiff's unlawful entry and false arrest claims are barred because a determination that the entry into her residence (and refusal to leave) was unconstitutional would necessarily call into question Plaintiff's underlying criminal conviction for disorderly conduct.

In *Heck v. Humphrey*, the Supreme Court ruled that a when a plaintiff brings a § 1983 claim, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 486-487.   Thus, a § 1983 claim is improper if a judgment in the plaintiff's favor would necessarily imply the invalidity of the plaintiff's conviction.  *Id.*

Plaintiff argues that the doctrine has no application here because her claims of unlawful entry and false arrest do not implicate or effect her ultimate conviction for disorderly conduct under Colo. Rev Stat. § 18-9-106(1)(c).  In support of her argument, Plaintiff relies upon the language in *Heck v. Humphrey, supra,* which provides that "if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id.* at 487. Because her conviction arising out of this incident was for disorderly conduct under Colo. Rev Stat. § 18-9-106(1)(c) – which provides that "[a] person commits disorderly conduct if he or she intentionally, knowingly, or recklessly . . . [m]akes unreasonable noise in a public place or near a

4

private residence that he has no right to occupy" – she asserts that her unlawful entry and false arrest claims do not implicate her ultimate conviction.  I agree.

In *Butler v. Compton,* 482 F.3d 1277, 1279 (10th Cir. 2007), the Tenth Circuit ruled that "[t]he starting point for the application of *Heck* then is the existence of an underlying conviction or sentence that is tied to the conduct alleged in the § 1983 action.  In other words, a § 1983 action implicates *Heck* only as it relates to the conviction that it would be directly invalidating." Because the plaintiff in that case was ultimately convicted of three unrelated burglary charges, the court found that the doctrine in *Heck v. Humphrey* was not implicated even though he pled guilty to the unrelated burglary charges as part of the plea agreement in which the burglary charge arising out of the challenged arrest was dismissed.  Under these circumstances the Tenth Circuit ruled that "[t]here is no related underlying conviction therefore that could be invalidated by [the plaintiff's] § 1983 action."  *Id.* at 1279 (*citing Muhammad v. Close*, 540 U.S. 749, 751-52, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004)).

Although Plaintiff's conviction for disorderly conduct was related to the incident underlying her § 1983 claims – in that she pled no contest to the charge in exchange for the dismissal of the initial charges brought after the incident – here, as in *Butler v. Compton, supra*, this § 1983 action, alleging unlawful entry, false arrest and excessive force, does not implicate her disorderly conduct conviction of  "intentionally, knowingly, or recklessly . . . [making] unreasonable noise in a public place or near a private residence that he has no right to occupy." *See Heck v. Humphrey, supra*, 512 U.S. at FN 6 (noting that a § 1983 action for unlawful arrest would be barred following a criminal conviction for resisting arrest, because "[i]n order to prevail in this § 1983 action, [the defendant] would have to negate an element of the offense of

5

which he has been convicted").

## VI.  INDIVIDUAL CLAIMS AGAINST APPLEGATE AND DEERY

Officers Applegate and Deery next assert that the claims raised by Plaintiff against them individually should be dismissed on basis that they are barred by the doctrine of qualified immunity.

Qualified immunity is a judicially created affirmative defense which protects state officials sued in their individual capacity for civil damages under 42 U.S.C. § 1983.  *See DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001).  Qualified immunity generally shields from liability "government officials performing discretionary functions . . .  insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  In analyzing the qualified immunity defense, the Tenth Circuit has adopted a three-part inquiry. *Gomes v. Wood,* 451 F.3d 1122, 1134 (10th Cir. 2006).

The first inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. *Id.* (*citing Lawrence v. Reed,* 406 F.3d 1224, 1230 (10th Cir. 2005)); *see also Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)("[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?").  The second inquiry is "whether the law was clearly established at the time the alleged violations occurred." *Gomes v. Wood*, *supra*, 451 F.3d at 1134 (*quoting Roska ex. rel. Roska v. Peterson,* 328 F.3d 1230, 1247 (10th. Cir. 2003)).  The law is clearly established if a reasonable official in the defendant's circumstances would understand that his or

6

her conduct violated the plaintiff's constitutional right. *Moore v. Guthrie,* 438 F.3d 1036, 1042 (10th Cir. 2006). Finally, the third part of the inquiry asks whether "extraordinary circumstances" – such as reliance on the advice of counsel or on a statute – so prevented the official from knowing that his or her actions were unconstitutional that he or she "should not be imputed with knowledge of a clearly established right." *Id. (quoting Roska ex. rel. Roska v. Peterson, supra,* 328 F.3d at 1251). I note that the Supreme Court recently held that lower courts are not required to address these inquiries in any specific order. *See Pearson v. Callahan*, ____ U.S. ___, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

As a result, when a defendant raises the defense of qualified immunity to § 1983 claims on summary judgment, the plaintiff must show the law was clearly established when the alleged violation occurred and must come forward with sufficient facts to show the official violated that clearly established law. *Foote v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997). The defendant then bears the normal summary judgment burden of showing no material facts that would defeat the qualified immunity defense remain in dispute. *Id.*

## A. UNLAWFUL ENTRY

As an initial matter, Officers Applegate and Deery assert Plaintiff cannot show that they unlawfully entered and remained her home. As such, they assert that they are entitled to qualified immunity under the first inquiry of the doctrine because even if Plaintiff's allegations are true, they do not establish a constitutional violation.

Under the Fourth Amendment, "searches and seizures inside a home without a warrant are presumptively unreasonable." *U.S. v. McCullough*, 457 F.3d 1150, 1163 (10th Cir. 2006)

(*quoting Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980)).  One

exception to the warrant requirement is when police reasonably believe an emergency exists that

makes it infeasible to obtain a warrant.  *U.S. v. Gambino-Zavala*, 539 F.3d 1221, 1225 (10th Cir.

2008).  Thus, exigent circumstances may justify a search where "(1) the officers have an

objectively reasonable basis to believe there is an immediate need to protect the lives or safety of

... others, and (2) the manner and scope of the search is reasonable."  *U.S. v. Najar*, 451 F.3d

710, 718 (10th Cir. 2006).

In her first amended complaint, Plaintiff alleges that on March 10, 2006, Officers

Applegate and Deery were dispatched to her house after receiving, unbeknownst to her, a 911

hang-up call from the residence made by her adult son.  While in route, the Officers were

advised that the 911 operator had called back, and a man who answered the phone advised that

the police were not needed.  The Officers were also informed that the matter was a verbal dispute

between a mother and son, that there was no claim of an injury and no weapons were involved.

After arriving at the house, the Officers were outside Plaintiff's front door and they allowed her

to open the door to let her dog out.  Although is it hotly disputed, Plaintiff alleges that the

Officers, without asking for or receiving permission, followed her dog back into her house.

Plaintiff then asked them to leave at which point she turned her back to them and proceeded

toward the stairs, expecting the Officers to exit the house as directed.

Under the test for whether exigent circumstances justify a warrant-less search, the

officers must have an objectively reasonable basis to believe there is an immediate need to

protect the lives or safety of themselves or others.  Whether a reasonable belief existed is based

on the "realities of the situation presented by the record from the viewpoint of prudent, cautious,

and trained officers." *U.S. v. Najar*, *supra*,  451 F.3d at 718-19.

Although the Officers argue that the information known to them at the time of the entry amounted to a reasonable belief that there was an immediate need to protect the safety of another, I disagree.  While they had information about a 911 hang-up, as well as a suspicious follow-up call by the dispatcher, there was no other evidence of an immediate need to protect the physical well-being of themselves or another.  During their depositions neither Officer Applegate nor Officer Deery were able to articulate any exigent circumstance that would support a non-consensual entry into Plaintiff's house.  Rather, the Officers rely on the mandatory investigation and arrest procedures required under the Colorado Domestic Violence Statute, Colo. Rev. Stat § 18-6-803.6.  Specifically, they maintained that they needed to enter the residence to investigate and determine if probable cause existed for an arrest related to domestic violence.  The Officers' obligation under § 18-6-803.6 does not, however, dismiss or excuse the constitutional requirements of the Fourth Amendment.  *See U.S. v. Davis*, 290 F.3d 1239, 1244 (10th Cir. 2002)(holding "an officer's warrantless entry into a residence during a domestic call is not exempt from the requirement of demonstrating exigent circumstances").  The Officers were required to investigate, but such investigation did not mandate that they enter or remain in Plaintiff's residence without consent under the totality of the circumstances.  I conclude that the facts as alleged by Plaintiff are sufficient to met her burden under Fed. R. Civ. P. 56 to establish an unconstitutional entry of her residence without a warrant.

The Officers also assert that the are entitled to qualified immunity under the second inquiry of the defense, in that they maintain that the law related to whether they unlawfully entered and/or remained in Plaintiff's residence was not clearly established at the time of this

incident.  Specifically, the Officers argue that the law was not clearly established as to the "scope of the emergency aid exception to the warrant requirement" for a warrant-less search and seizure.

The Officers rely on *U.S. v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006), which was decided just over three months after the incident at issue here.  In that case the Tenth Circuit reviewed an incident in which officers had received a 911 call from a residence in which: a caller said nothing and then hung up; the dispatcher repeatedly called the residence and each time phone was picked up and immediately hung up; officers saw a person moving around inside residence but no one answered door in response to their repeated knocking; and when the defendant finally opened door, he said he was alone and had not called 911.  *Id.*  The Court then applied the existing standard for assessing whether the risk of personal danger created exigent circumstances to conclude that the entry of the residence was lawful.  *Id.* at 720.

The Officers here argue that *U.S. v. Najar, supra,* changed the existing law as set forth in *U.S. v. Davis*, 290 F.3d 1239 (10th Cir. 2002), in which the Tenth Circuit found that the officers responding to a "possible domestic disturbance" had no reasonable grounds to believe that there was immediate danger to safety when the defendant was not threatening, had no reputation for violence, and officers could have checked girlfriend's condition without entering the home.  *Id.*

Contrary to the Officers' argument,  I disagree that the precedent related to whether they unlawfully entered and/or remained in Plaintiff's residence was not clearly established at the time of this incident.  The Supreme Court has "shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional."

*Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)(*discussing Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).  "Thus, government officials must make reasonable applications of the prevailing law to their own circumstances, and they can still be on notice that their conduct violates established law even in novel factual circumstances."  *Gomes v. Wood, supra*, 451 F.3d at 1134 (internal quotations and citations omitted).   The application of existing law to the unique facts of each case does not mean that the law was not clearly established.  Plaintiff has meet her Fed. R. Civ. P. 56 burden to show that the law was clearly established and the facts as alleged are sufficient facts to show the Officers violated that clearly established law.

## B. ILLEGAL SEIZURE/ARREST

Officers Applegate and Deery next assert that they are entitled to qualified immunity on Plaintiff's claim that her arrest constituted an unlawful seizure in violation of her Fourth Amendment rights.  The Officers argue that even if Plaintiff's allegations are true, they do not establish a constitutional violation in that probable cause existed for her arrest under the first inquiry of the qualified immunity doctrine.

In her complaint, Plaintiff alleges that as she was walking away, after asking them to leave, Officer Applegate noticed she was holding a screwdriver in her right hand.  Plaintiff asserts that at no time did she wield the screwdriver in an aggressive or menacing manner.  However, without first asking her to put the screwdriver down, the Officers "grabbed [her] right arm, twisted it behind her back and wrested the screwdriver from her hand, in the process knocking her to the floor" causing severe pain.  At this point Plaintiff's adult son, Gino Caranelli, came downstairs.  While coming down the steps, Caranelli directed the Officers to get

out of the house and was attempting to call 911 to complain of the Officers' conduct.  Officer

Applegate ordered him to stop and to put the phone down.  When he refused, Officer Applegate

placed Caranelli in a rear wrist lock, took him the floor and handcuffed him.  Officer Applegate

also pulled his pistol and threatened to shoot the dog.  During this time, Officer Deery grabbed

Plaintiff's injured right arm, causing further severe pain, and handcuffed her and placed her

under arrest.

An arrest without a warrant is permissible, and implicates the defense of qualified

immunity, when an officer "has probable cause to believe that a person committed a crime."

*Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995).  An officer effecting a warrantless arrest is

"entitled to immunity if a reasonable officer could have believed that probable cause existed to

arrest the plaintiff."  *Id.*  "Probable cause to arrest exists only when the facts and circumstances

within the officers' knowledge, and of which they have reasonably trustworthy information, are

sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has

been or is being committed."  *Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007)(*quoting*

*U.S. v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004)).

The Officers assert that they had probable cause to arrest Plaintiff based on her resisting

efforts to remove the screwdriver from her hand, her admitted disregard to follow orders, and her

attempts to pull away from Officer Deery.  However, even assuming the officers had probable

cause to arrest Plaintiff, because in the light most favorable to Plaintiff, no exigent circumstances

existed to permit the officers to enter the residence, I agree with Plaintiff that the subsequent

arrest was unlawful.  *See generally U.S. v. Reeves*, 524 F.3d 1161, 1169 (10th Cir. 2008)(in a

routine arrest, an officer "may enter an individual's home without consent and conduct a

warrantless arrest if *both* probable cause and exigent circumstances exist")(emphasis added). Therefore, because I have determined that Plaintiff has meet her burden under Fed. R. Civ. P. 56 of alleging that the entry into her house constituted a constitutional violation, I likewise find that the Officers are not entitled to qualified immunity on the arrest made while they were in the residence.

## C.  EXCESSIVE FORCE

Finally, Officers Applegate and Deery assert that they are entitled to the defense of qualified immunity on Plaintiff's claim of excessive force.  They first maintain that Plaintiff has failed to alleged a constitutional violation because the force used by them in taking her screwdriver and in placing her in handcuffs was objectively reasonable.

A Fourth Amendment excessive force claim focuses on whether the force used was reasonable under the facts and circumstances presented.  *Fogarty v. Gallegos,* 523 F.3d 1147, 1159 (10th Cir. 2008)(*citing Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)).  In so doing, Courts must pay "careful attention" to factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*  I am also to consider whether an officer's own "reckless or deliberate conduct" in connection with the arrest contributed to the need to use the force employed.  *Id.* at 1160 (*citing Jiron v. City of Lakewood,* 392 F.3d 410, 415 (10th Cir. 2004); *Medina v. Cram,* 252 F.3d 1124, 1132 (10th Cir. 2001)).

The Officers argue that they were justified in using minimal physical force for officer

13

safety reasons in order to take the screwdriver and then to effectuate the arrest and keep Plaintiff under control once arrested.  As discussed above, Plaintiff alleges that the Officers grabbed her right arm while she was walking away, twisted it behind her back and wrestled the screwdriver from her hand and, in the process, caused her severe pain.  Then, Officer Deery grabbed Plaintiff's injured right arm, causing her further severe pain and injury, while handcuffing her and taking her to the ground.  Plaintiff asserts that the Officers' use of force bruised her right arm and tore her right shoulder rotator cuff, necessitating surgical repair.  While Plaintiff concedes that she ignored verbal commands, I agree that she has meet her Fed. R. Civ. P. 56 burden of showing a genuine dispute of facts, which if true, are sufficient to establish a constitutional violation under the circumstances.

I also reject the Officers' argument that the law was not clearly established regarding Plaintiff's excessive force claim because she "has not come forward with any Supreme Court or Tenth Circuit case supporting her view that grabbing a screwdriver from her hand, grabbing her arm and placing it behind her back, and placing her on her knees on the floor was excessive force."   Plaintiff has met her burden to show that the law was clearly established – even if she did not cite to a case applying the unique facts of this case – and her alleged facts are sufficient to show the Officers violated that clearly established law.

## VII.  CLAIMS AGAINST TOWN OF VAIL

Finally, Defendants argue in this motion that Plaintiff has not sufficiently alleged or proven her § 1983 claims against the Town of Vail.  Plaintiff's claim of municipal liability against the Town of Vail is based on its alleged failure to train and supervise the Officers and/or its ratification of  their allegedly unconstitutional conduct.

14

Municipal entities and local governing bodies do not enjoy absolute immunity from suit under § 1983. *Moss v. Kopp,* 559 F.3d 1155, 1168 (10th Cir. 2009)(*citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 165-66, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)).   Thus, to establish municipal liability, a plaintiff must show: (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged. *Jenkins v. Wood, supra,* 81 F.3d at 993-94 (*citing City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)).

In this motion for summary judgment, the Town of Vail asserts that the claims against it should be dismissed, as a matter of law, because the record is devoid of any evidence that its training or supervision of its police officers was reckless or grossly negligent, or that it had actual or constructive knowledge that its alleged failure to act was likely to result in harm, but that it choose to ignore that risk.  In addition, the Town argues that there is no evidence linking the alleged  failure to train or supervise to the unconstitutional conduct.

Plaintiff argues that the evidence shows that both Officer Applegate and Officer Deery did not receive any specific training regarding the appropriate response to 911 calls, and that their position that they responded here in accordance with the Colorado Domestic Violence Statute is untenable.  As a result, she argues that "the Town's policies and  procedures as confirmed by their field training officers and their sergeant who supervised this matter involving the entry, demonstrate that the policies and approved procedures of the Town . . . give rise to municipal liability."

15

I disagree.  First, there is ample unchallenged evidence that the Town provides its Officers with training on responding to 911 calls, search and seizure, and the use of force. Plaintiff's claim that the Officers are not trained to respond to 911 calls is not supported by the evidence; specifically, she relies solely on Officers' deposition testimony that the training manual does not contain information specifically as to 911 responses, but that such information is encompassed in the information on how to respond to an "in progress" and domestic disturbance calls.   Such evidence is clearly insufficient to show that the Town's training – with regard to its search and seizure policies, including its officers' response to 911 calls, and use of force – constituted a failure to train in that its inadequacy likely resulted in the violation of constitutional rights.   Moreover, Plaintiff has not met her burden to prove that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need" for additional training.  *Jenkins v. Wood, supra*, 81 F.3d at 993-94 (*quoting City of Canton v. Harris*, *supra*, 489 U.S. at 390).

In addition, to bring a claim under § 1983 against a municipality for negligent supervision, a plaintiff must likewise show that the failure to supervise "evidences a deliberate indifference to the rights of its inhabitants" such that this shortcoming is "thought of as a city policy or custom."  *Bell v. City of Topeka,* 496 F.Supp.2d 1182, 1195 (D. Kan. 2007)(*quoting Whitewater v. Goss*, 192 Fed.Appx. 794, 797 (10th Cir.2006)).   Plaintiff's sole evidence of inadequate supervision is her allegation that Officer Applegate, as Officer Deery's field training officer, failed to supervise her during the incident, and that Sergeant Bettis assisted in determining the applicable criminal charges to be filed against Plaintiff and then failed to

16

reccommend an internal affairs investigation.  This evidence fails to shown any deficiencies in the Town's supervision of its officers establishing deliberate indifference.  Plaintiff's evidence, even when viewed in the light most favorable to her, is insufficient for a reasonable jury to find that the policymakers of the Town can reasonably be said to have been deliberately indifferent in its failure to train or supervise its officers.

Plaintiff also alleges that the Town is subject to municipal liability under a theory of ratification.  While a municipality cannot be held liable under § 1983 on a *respondent superior* theory, *see Monell v. Dept. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Tenth Circuit has recognized that a municipality may be held liable under § 1983 "if a subordinate's position is subject to review by the municipality's authorized policymakers and the authorized policymakers approve a subordinate's decision and the basis for it, their ratification will be chargeable to the municipality." *Moss v. Kopp, supra*, 559 F.3d at 1168-69 (*citing City of St. Louis v. Praprotnik,* 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)). However, "proof of a single incident of unconstitutional activity is ordinarily not sufficient to impose municipal liability, and where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Id.* at 1169 (*citing Jenkins v. Wood, supra*, 81 F.3d at 994).

In response to this motion, Plaintiff argues that "the reviewing authority, made up of Sgts. Craig Bettis and Mark Allen, approved the conduct of Officers Applegate and Deery as not constituting excessive force or unlawful arrest" in that they approved the primary and supplemental incident reports pertaining to this matter, and Sergeant Allen approved the criminal

17

filings made against Plaintiff.  She further asserts that "[h]ence, the conduct of Officers

Applegate and Deery was judged by the persons charged with the responsibility of reviewing

that conduct to be within the policies and procedures of Vail, consistent with its training and

ratified by it."

I again find that Plaintiff's evidence, even when viewed in the light most favorable to

her, is insufficient for a reasonable jury to conclude that the alleged constitutional violation was

subject to review by the municipality's authorized policymakers, or that they approved of the

decision and the basis for it, in order to find ratification and, as a result, § 1983 liability

chargeable to the municipality.  "Simply going along with discretionary decisions made by one's

subordinates ... is not a delegation to them of the authority to make policy."  *Milligan-Hitt v.*

*Board of Trustees of Sheridan County School Dist. No. 2,* 523 F.3d 1219, 1229 (10th Cir.

2008)(*quoting City of St. Louis v. Praprotnik, supra,* 485 U.S. at 130).

ACCORDINGLY, I GRANT IN PART and DENY IN PART the Defendants' Motion for

Summary Judgment [**Doc #45**] as follows:

(1)  I GRANT the motion to the extent Plaintiff asserts claims against Defendant James
Applegate in his official capacity, and claims against Defendant Craig Bettis his official
capacity; because Plaintiff's claims against Defendant Bettis are solely asserted in his official
capacity,  he is HEREBY DISMISSED as a party to this case;

(2)  I DENY the motion to the extent that Defendants seek judgment in their favor on
some of Plaintiff's claims as barred by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477,
114 S. Ct. 2364, 129 L.Ed.2d 383 (1994);

(3)  I DENY the motion to the extent that Defendants seek judgment in their favor on the
claims raised by Plaintiff against Defendant James Applegate and Defendant Jessica Deery, in
their individual capacity, as barred by the doctrine of qualified immunity; and

(4) I GRANT the motion to the extent that Defendants seek judgment in favor of Defendant Town of Vail, Colorado; and

(5) JUDGMENT shall enter in favor of Defendants Craig Bettis and Town of Vail, with costs awarded these defendants.

Dated: May __19__, 2009, in Denver, Colorado.

BY THE COURT:

__s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE
